UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ROY C. HEAPE,

Plaintiff,

v.  607CV012

ROGER L. FLANAGAN,

Defendant.

## ORDER

Informed telephonically that the parties settled this diversity-jurisdiction based, personal-injury case, the Court entered its standard "*Kokkonen*,"[1] case-dismissal Order on 5/22/08. Doc. # 18. Through that Order the Court "expressly retain[ed] jurisdiction to enforce any settlement the parties may care to file, under seal if so desired, within thirty (30) days of the date this Order is filed." *Id.* The parties have not yet filed their settlement agreement but have until 6/23/08 to do so.

Plaintiff Roy C. Heape anticipates a settlement payment from defendant Roger L. Flanagan, but Heape's health insurer wants a piece of it (*i.e.*, it seeks subrogation). So Heape now wants this Court to determine that his insurer is not entitled to any because Heape has not been fully compensated by it.[2]

Thus, on 6/3/08 Heape "move[d] the Court to make a determination" -- as between himself and his health insurer -- "whether [he] is 'fully compensated' pursuant to OCGA § 33-24-56.1 by the anticipated settlement of this matter." Doc. # 19. He requests that the Court do so during the 6/16/08, § 33-24-56.1 hearing that he successfully requested. Doc. # 20.

However, this Court *lost* general subject-matter jurisdiction over this case (except to enforce the Heape-Flanagan settlement -- if timely filed) when it dismissed it on 5/22/08. Doc. # 18. And Heape's health insurer ("Blue Cross Blue Shield of Georgia through Healthcare Recoveries," doc. # 19 at 3) has never been a party in this case, so it cannot be subject to any effort to enforce the settlement.

In effect, then, Heape seeks a post-dismissal judgment declaring that Healthcare Recoveries (over whom the Court thus has no *personal* jurisdiction) is entitled to no subrogation. Heape thus ignores two roadblocks: (1) Healthcare Recoveries is not a party; and (2) the Court no longer has general *subject-matter* jurisdiction (at most it will have reserved only a limited, "settlement-enforcement" jurisdiction),[3] so it

---

[1] See *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994) (authorizing courts to retain jurisdiction, upon use of an F.R.Civ.P. 41(a)(2)-based, "settlement-dismissal," to enforce a settlement agreement); ATTORNEY'S PRACTICE GUIDE TO NEGOTIATIONS § 15:23 (*Settlement agreements—Court enforcement of settlement agreements*) (Apr. 2008).

[2] In some instances Georgia law allows an insurer to recover benefits that it has paid to its insured from the recovery the insured may obtain from a third-party tortfeasor, but only if the insured has received full compensation for his losses from the tortfeasor. See, e.g., *Paschall Truck Lines Inc. v. Kirkland*, 287 Ga.App. 497, 498-99 (2007) (employer could not enforce subrogation lien against claimant's personal-injury settlement proceeds, absent showing that claimant had been fully and completely compensated for his injury); *see also Sanders v. Lull International*, 402CV141, doc. # 158 at 9-11 (S.D.Ga. Order entered 4/12/04) (unpublished).

[3] A practice guide reminds that

> [w]hether the court will retain jurisdiction over a settlement agreement is particularly problematic when the underlying cause was first litigated in federal court. The settlement agreement, which is by its nature a contract, would not be subject to federal jurisdiction in and of itself. Settlement agreements with regard to federal actions should thus specifically provide

lacks authority to hold a subrogation hearing, even if his insurer consented to personal jurisdiction or otherwise intervened.[4]

Federal courts, of course, are obligated to examine their own jurisdiction.[5] Having done so here, the Court concludes that it must cancel the 6/16/08 hearing and invite jurisdictional briefing from the parties should they disagree. Special attention should be paid to *what* jurisdiction remains in this Court. Again, the parties have yet to file their settlement agreement. *See* doc. # 18 (beckoning them to do so within 30 days of that Order's 5/22/08 entry). If they fail to do so by 6/23/08 (6/21/08 is a Saturday, so Monday, 6/23/08, per F.R.Civ.P. 6(a)(3)), what jurisdictional consequence befalls any settlement-enforcement effort at all, let alone any attempt to show "subrogation jurisdiction"?

For that matter, Heape's request that this Court take *any* post-dismissal action compels the Court to re-examine its "*Kokkonen*" practice, which by definition contemplates post-dismissal action (*i.e.*, to enforce a settlement). *Kokkonen* contemplated that settling parties would present their settlement agreement *with* their F.R.Civ.P. 41(a) dismissal-order, so that the limited reservation of settlement-enforcement jurisdiction sanctioned by *Kokkonen* becomes

---

> that the court retains jurisdiction and should be entered and approved by the court.

ATTORNEY'S PRACTICE GUIDE TO NEGOTIATIONS § 15:23.

[4] For an example of intervention, *see Marks v. Landstar Ligon, Inc.*, 2007 WL 1810141 at * 1 (N.D.Ga. 6/18/07) (unpublished).

[5] *See Chacon-Botero v. U.S. Atty. Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) ("This Court is obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking").

bottled up into a dismissal *judgment*. *See Kokkonen*, 511 U.S. at 381; *see also Doña Ana Mut. Domestic Water Consumers Ass'n v. City of Las Cruces*, 516 F.3d 900, 906 (10th Cir. 2008). This Court's *Kokkonen* form order, in contrast, uses a sort of reverse technique: the Court dismisses the case and *then* the parties *may* file a settlement agreement.

Is that legally valid? Some deeper scrutiny is warranted in answering that question. *Kokkonen* expressly authorizes courts to retain indefinite post-dismissal jurisdiction to enforce such a settlement *judgment*. In effect, then, a case is not 100% dismissed. Rather, a jurisdictional residue is retained -- enough to enforce the settlement. That jurisdictional retention forms part of the court's *judgment* of dismissal. And courts have always had jurisdiction to enforce their judgments. *See e.g.*, 28 U.S.C. § 1963; F.R.Civ.P. 69; *Kokkonen*, 511 U.S. at 379-81; *Jenkins v. Kansas City Missouri School Dist.*, 516 F.3d 1074, 1080-81 (8th Cir. 2008) ("While a district court's jurisdiction typically ends when a case is closed and judgment entered, a district court retains ancillary jurisdiction to manage its proceedings, vindicate its authority, and effectuate its decrees") (quotes omitted).

That residual or ancillary (some have said "inherent") jurisdiction, in turn, by definition is limited to enforcing what is contained *within* such judgments (*i.e.*, an express reservation of settlement-enforcement jurisdiction):

> Federal courts have ancillary jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them. Specifically, a federal court has jurisdiction to enforce a settlement agreement in a dismissed case *when* the dismissal order [hence, judgment] *incorporates* the settlement terms, or the

court has retained jurisdiction over the settlement contract.

*Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) (quotes and cites omitted). That's why the *Kokkonen* Court spoke of having settling parties funnel their settlement into a Rule 41(a) dismissal order (hence, a final judgment of dismissal).[6]

After the U.S. Supreme Court issued its *Kokkonen* opinion, this Court -- for the convenience of parties -- generated a form order that it enters once parties to a lawsuit phone in or otherwise announce their settlement. Under that order, settling parties have 30 days within which to meet *Kokkonen*'s requirement (which, again, is to present a Rule 41(a) dismissal order that embodies their settlement, *see id.*, 511 U.S. at 381-82) by filing their settlement and expressing their intent to have it incorporated into that settlement-dismissal order. By the form order's terms, that adoption is automatic once the parties timely file their settlement.

But *Kokkonen* did not explicitly authorize that. And, ordinarily a district court divests itself of jurisdiction to act once it dismisses a case. Only limited jurisdiction thereafter remains. For example, if there is an appeal, then a district court may invoke limited jurisdiction to "aid" that appeal, such as when it hears motions to supplement the record on appeal. Courts also are vested with jurisdiction to entertain a motion to alter or amend their judgment under F.R.Civ.P. 59(e); to provide relief from judgment under F.R.Civ.P. 60; to address if not also enforce F.R.Civ.P. 11 sanctions; to enforce F.R.Civ.P. 41(a)(2)-*Kokkonen*, settlement-dismissal judgments, etc. Otherwise, there is *no* jurisdiction to act, much less do things like enforce settlements, hold subrogation hearings, etc. And most of the post-dismissal, "limited-jurisdiction-extending" motions pack time-limits to them (*e.g.*, 10 days under Rule 59(e); variable times under Rule 60(b); 30 or 60 days under F.R.App.P. 4 to secure an appeal and thus maintain jurisdiction on which one may support a motion to supplement).

Taking some liberty both with what *Kokkonen* authorizes and its limited, post-dismissal jurisdictional residue, this Court (once informed of settlement) in effect dismisses each case with a "blank check" to the parties to *create* settlement-enforcement jurisdiction by filing a copy of their settlement -- within 30 days of the order's entry. The mere filing of their settlement, then, is automatically equated to the Rule 41(a) dismissal judgment contemplated by *Kokkonen* -- without any further action by this Court. The Court initially allowed parties 10 days to do this (pegging it to Rule 59(e), since arguably their settlement-filing "altered or amended" the dismissal judgment) but then later extended it to 30 days to give litigants more time to finalize and file their settlement paperwork.

The question naturally arises whether that mechanism takes *Kokkonen* too far. Federal court jurisdiction, after all, is limited and flows from Congress and the Constitution; neither parties nor courts can create it. *Kokkonen*, 511 U.S. at 377; *Hastings v. Wilson,* 516 F.3d 1055, 1060 (8th Cir. 2008); *Riley v. Fairbanks Capital Corp.*, 222 Fed.Appx. 897, 899 (11th Cir. 2007). In fact, "[i]t is be to presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction...." *Kokkonen*, 511 U.S. at

---

[6] Note that, although only Rule 41(a)(2) speaks of voluntary dismissal per court order, *Kokkonen* expressly sanctions the incorporation of what is now Rule 41(a)(1)(A)(ii) (which otherwise does not require a court order to dismiss a case) into a court dismissal order for settlement-enforcement purposes. *Kokkonen*, 511 U.S. at 381-82.

377 (cites omitted).

So, two additional issues (beyond the question of what happens if the instant parties fail to file their settlement by 6/23/08) arise here:

(1) whether this Court's "blank-check" mechanism is legally valid, since this Court's practice flips *Kokkonen* "backwards" (*Kokkonen* says file the settlement *before* the case is dismissed so that the settlement becomes bottled up into the dismissal judgment to be enforced; this Court's "*Kokkonen* Order" dismisses the case first and *then*, in self-executing fashion, later captures the settlement); and

(2) even if that "backward" mechanism is valid, is its 30-day window valid (*e.g.*, whether it should be pegged to Rule 59(e)'s ten-day window rather than the 30-day window that the Court currently uses, since settling parties in effect are said to be seeking to "alter or amend" a settlement-dismissal order by having it incorporate their later-filed settlement).

If there is no such authority for the Court's form *Kokkonen* order,[7] then there now is no jurisdiction *at all* to hear Heape's subrogation motion (because the Court dismissed this case and no residual jurisdiction has been invoked) -- in which case the motion must be denied.

Heape thus should focus on these points. And if he shows that the Court has "*Kokkonen*" jurisdiction, then he must go on to show how it has jurisdiction to resolve rights affecting a party (Healthcare Recoveries) not before it.

Accordingly, the Court is canceling the 6/16/08 hearing in this case and solicits from Heape -- and Flanagan, if he wishes -- a jurisdictional brief to be filed within 15 days of the date this Order is served. If it so chooses, Healthcare Recoveries may submit an *amicus curiae* brief.

This __9__ day of June, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] There might be a better practice. Once the Court receives word that settlement has been reached but not yet papered, it can enter an Order *administratively* closing the case. That removes the case from the Court's statistical reporting docket and terminates deadlines for discovery, motions, etc. The case is otherwise not terminated, however, for no dismissal order/judgment has been entered. Then, the parties can take whatever time the Court gives them (presumptively 30 days, unless the Court specifies otherwise in its administrative-closure order) to present a *Kokkonen*, Rule 41(a)(2) dismissal judgment that incorporates their settlement. Where lax parties fail to "*Kokkonenize*" the case, the Court can (invoking F.R.Civ.P. 41(b) and S.D.GA.LOC.R. 41.1(c) (lack of prosecution)) simply dismiss it with prejudice.